ALFRED SPRING, PLAINTIFF, *v.* HENRY O. WAIT, TREAS-
URER OF CATTARAUGUS COUNTY, N. Y., DEFENDANT:

*Board of Supervisors of Cattaraugus county—cannot alter the salary of the surrogate of said county.*

Chapter 482 of 1875, passed in pursuance of section 23 of article 3 of the Consti-
tution, authorizing the legislature to confer further powers of local legislation
upon boards of supervisors, did not authorize the Board of Supervisors of
Cattaraugus county to alter the salary of the surrogate of that county, as
established by chapter 767 of 1872, as amended by chapter 401 of 1877.

CONTROVERSY submitted upon an-agreed statement of facts pur-
suant to section 1273 of the Code of Civil Procedure.

The plaintiff, at the general election in 1879, was duly elected surrogate of Cattaraugus county, and took office January 1, 1880, and a quarter's salary became due to him as such surrogate April 1, 1880. The question submitted was, whether he was entitled to re-
ceive one quarter of $1,500 or one quarter of $1,200. The plaintiff claimed the former, and the defendant claimed it should be the latter.

*G. W. Rider* and *Alfred Spring*, for plaintiff.

*Allen & Thrasher*, for defendant.

HARDIN, J. :

Section 15 of article 6 of the Constitution, adopted in 1867, re-

lating to the county judges and surrogates, and their salaries, contains the following provision as to such officers, viz.: "His salary, and the salary of the surrogate, when elected as a separate officer, *shall be established by law*, payable out of the county treasury, and shall not be diminished during his term of office." ·

Prior to the adoption thereof, such salaries were fixed under the Constitution of 1846, by the board of supervisors. The section of the Constitution of 1867 was reported so as to provide that the salary should be fixed by the board of supervisors, but upon an amendment moved and advocated by Judge COMSTOCK, the language was changed by the constitutional convention so as to confer the power upon the legislature.

The intent of the framers of the Constitution of 1867 to confer the power upon the legislature to establish such salary, is made thus very clear. *Healey* v. *Dudley* (5 Lans., 115), was decided by this court in 1871, and very clearly points out that the section quoted confers the power upon the legislature, and that case also holds that the language just quoted confines the power to the legislature. Since that decision was made, and in 1874, the Constitution has been amended, and the 23d section of article 3 been incorporated into the Constitution in the following language:

Section 23. "The legislature shall, by general laws, confer upon the board of supervisors of the several counties of the State, such further powers of *local legislation* and *administration* as the legislature may *from time to time* deem expedient."

When that section was incorporated into the Constitution there was existing an enactment of the legislature of 1872, in chapter 767, providing for the establishment of the salaries by law of such officers, pursuant to section 15 of the Constitution, quoted.

Section 1 of the act of 1872 established the salary of the surrogate of Cattaraugus county at $1,500 per year. Subsequent to the amendment of the Constitution in 1874, a general law was, in 1875, chapter 482 of laws of that year, passed by the legislature, which conferred " on boards of supervisors further powers of local legislation and administration." That act, in subdivision 2 of section 1 declares the board of supervisors shall have power, viz.:

" To fix, subject to the limitations of section 15, article 6 of the

Constitution, the salaries and per diem allowances of county *officers*, whose compensation may be a county charge." If we turn to section 15 of the Constitution for the limitations named in the language of the act of 1875, just quoted, we find the words are those which declare the salary shall not be diminished during the term of office. The decision made by the court in *Healey* v. *Dudley* (*supra*), applied to this case, would require us to hold that the act of 1875 did not confer power upon the board of supervisors to interfere with and change the salary of the surrogate, as the same had been established by the legislature of 1872, and that no power to legislate by the board of supervisors was within the meaning of section 23 of article 3 of the Constitution.

But in addition to the views expressed in that case by MULLIN, P. J., we think there is another complete answer to the position taken by the defendant here. Section 23 of article 3 in terms declares that the Legislature shall confer upon Boards of Supervisors " such further powers of *local* legislation and administration as the legislature *may from time to time* deem expedient," thus conferring a discretion upon the legislature as it shall deem expedient from time to time to exercise it.

We have already seen that the act of 1872, establishing the salary by law of the surrogate of Cattaraugus at $1,500, was in force when the act of 1875 was passed, we cannot say that the law of 1875 annulled or altered the act of 1872. Beyond that, in 1877, by chapter 401, the legislature amended the act of 1872 in some particulars, and in express terms declared the salary of the surrogate of Cattaraugus " fixed at the sum of one thousand and five hundred dollars." Thus evincing a clear and unmistakable intent to carry out the provision of section 15 of the Constitution, and a clear intent to exercise its discretion in regard to that subject, and as clearly evincing its intent to declare it inexpedient to allow the board of supervisors to exercise any power over the subject.

We conclude, therefore, that the resolution of the board of supervisors of Cattaraugus county, passed in 1878, was inoperative and void, so far as it undertook to provide that the salary of the surrogate should be $1,200 per year, instead of $1,500, as estab-

lished by a law, passed by the legislature, in chapter 401 of Laws of 1877.

It follows, therefore, that the plaintiff or surrogate is entitled to receive his salary at the rate of $1,500 per year, and that the defendant, the county treasurer of Cattaraugus county, was wrong in withholding $75 thereof (besides the $300 paid) April 1, 1880.

We must, therefore, order judgment in favor of the plaintiff for $75, and interest from April 1, 1880, with costs. As no question was raised as to the power of the treasurer to submit the controversy, we do not pass upon that question.

Judgment ordered for the plaintiff for $75, and interest from April 1, 1880, with costs.

TALCOTT, P. J., and SMITH, J., concurred.

Ordered accordingly.